UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| THE CROW CREEK SIOUX TRIBE, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>vs.<br><br>THE BUREAU OF INDIAN AFFAIRS OFFICE OF JUSTICE SERVICES,<br><br>Defendant. | 3:24-CV-03015-ECS<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES |

On August 15, 2024, Defendant Bureau of Indian Affairs Office of Justice Services ("BIA-OJS") responded to a request submitted by Plaintiff Crow Creek Sioux Tribe ("the Tribe") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Tribe submitted its FOIA request approximately seven months earlier. The Tribe filed a Complaint, Doc. 1, approximately three months before the response seeking judicial assistance in obtaining a response. Before the Court is Plaintiff's Motion for Attorneys' Fees, Doc. 13, which the Tribe claims it is entitled to for substantially prevailing in this litigation. See 5 U.S.C. § 552(a)(4)(E). BIA-OJS opposes the motion. Doc. 24. For the reasons stated below, the Court grants in part and denies in part the Tribe's motion.

I.      **Factual Background**

On January 26, 2024, the Crow Creek Sioux Tribe submitted a FOIA request to BIA-OJS seeking "[t]he full budget and any documents relating thereto, for the Crow Creek Agency BIA-OJS Law Enforcement Services for fiscal years 2018-2023," along with a detailed list of documents the request encompassed. Doc. 26 ¶ 2; Doc. 15 ¶ 7. The Tribe claims the sought-after documents were "necessary for the Tribe to understand and determine the categories and amount of funding for law enforcement services for the Tribe," to respond to "an ongoing public safety crisis on its Reservation that has caused the loss of life and continues to endanger the health and welfare of the Tribe and its members." Doc. 1 ¶¶ 2, 11.

On that same date, counsel for the Tribe received an email from the Department of the Interior with the request tracking number, indicating a request status of "Received." Doc. 15 at 4. On January 29, 2024, another email indicated an updated status of "Assigned for Processing." Id. at 5. In response to an email sent to him in December 2023, Special Agent in Charge ("SAC") of BIA-OJS District I JR Burge emailed the Tribe's counsel on February 5, 2024, stating, "These FOIA requests were received and are being processed as per regulations." Doc. 17 at 10.

On May 23, 2024, the Tribe filed its Complaint, seeking judicial assistance in obtaining a response to the request. Doc. 1. On August 14, 2024, this Court scheduled a status conference between the parties. Unnumbered Entry before Doc. 6. A day later, on August 15, 2024, BIA-OJS responded to the Tribe's request. Doc. 26 ¶ 10. After the status conference, this Court entered a scheduling order requiring the Tribe to review the documents received and determine their sufficiency. Doc. 7 at 1. The Tribe ultimately determined that Defendant's response was sufficient, and it would "not proceed with this litigation." Doc. 8 at 1.

2

Pending before the Court is the Tribe's motion for attorney's fees, pursuant to FOIA. Doc. 13. The Tribe contends it has substantially prevailed in this matter and is entitled to attorney's fees under the law. Id. The motion is now fully briefed and before the Court.

**II.     Discussion**

    **A.     Standard Under FOIA for Awarding Attorney's Fees**

In the Eighth Circuit, a complainant under FOIA is entitled to attorney's fees if it is both "eligible" for and "entitled" to the award. Miller v. U.S. Dep't of State, 779 F.2d 1378, 1389 (8th Cir. 1985).

        **1.     Eligibility for an Award of Attorney's Fees**

A complainant under FOIA is "eligible" for attorney's fees if it "has substantially prevailed through [its] lawsuit." Id.; see 5 U.S.C. § 552(a)(4)(E)(i). As relevant here, "a complainant has substantially prevailed if the complainant has obtained relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." § 552(a)(4)(E)(ii)(II). To determine whether there has been such a voluntary or unilateral change in position, courts in the Eighth Circuit use the "catalyst theory." Zarcon, Inc. v. NLRB, 578 F.3d 892, 894–95 (8th Cir. 2009).

Under the catalyst theory, a party is entitled to "prevailing party status if [its] lawsuit was a catalyst that brought about or prompted the defendant's remedial action." A.J. ex rel. L.B. v. Kierst, 56 F.3d 849, 865 (8th Cir. 1995) (citations omitted). In the FOIA context, absent a "favorable judgment," that means showing "first, that prosecution of the action could reasonably be regarded as necessary to obtain the information, and second, that the existence of the lawsuit had a causative effect on the release of the information." Miller, 779 F.2d at 1389 (citation

3

omitted). The parties here dispute whether the Tribe's lawsuit was a catalyst that brought about BIA-OJS's August 15 response to the Tribe's FOIA request. Doc. 14 at 7–9; Doc. 24 at 3–6.

To support its position, the Tribe points the Court to <u>Electronic Privacy Information Center v. United States Department of Homeland Security</u>. Doc. 14 at 8 (citing 811 F. Supp. 2d 216 (D.D.C. 2011)). In that case, the court cautioned that even if it is a "salient factor," "the mere filing of the complaint and the subsequent release of documents is insufficient to establish causation." 811 F. Supp. 2d at 232 (quoting <u>Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.</u>, No. 08-2133 EGS/DAR, 2009 WL 1743757, at *3 (D.D.C. June 15, 2009)). So, it becomes the court's duty to determine whether the timing of the response was due to "the threat of an adverse court order [or] an unavoidable delay accompanied by due diligence in the administrative process." <u>Id.</u> (quoting <u>Church of Scientology v. Harris</u>, 653 F.2d 584, 588 (D.C. Cir. 1981)). The court held that because the defendant (1) did not produce a response until the lawsuit was filed; (2) did not "claim to have conducted any substantive searches for records prior to the commencement" of litigation; and (3) did not "seek to take advantage of the statutory mechanisms available to extend its response time," it was the "plaintiff's lawsuit [that] clearly elicited a 'voluntary or unilateral change in [the defendant agency's] position.'" <u>Id.</u> at 232–33 (quoting 5 U.S.C. § 552(a)(4)(E)(ii)(II)).

The Tribe persuasively analogizes BIA-OJS's behavior. Doc. 14 at 8–9. It is undisputed that BIA-OJS did not deliver a response until August 15, 2024, almost three months after the filing of this lawsuit. Doc. 26 ¶ 10. And Mistie Little Wind, Acting National FOIA Coordinator for BIA-OJS, declared that the search for records began on July 11, 2024, almost two months after the filing of the lawsuit. <u>Id.</u> ¶¶ 1, 9. Ms. Little Wind cites the office's backlog and understaffing as the reason for the delay. <u>Id.</u> ¶¶ 6–8. But like in <u>Electronic Privacy Information</u>

4

Center, BIA-OJS did not "take advantage of the statutory mechanisms available to extend its response time." 811 F. Supp. 2d at 233. To wit: upon notice to a requestor, 5 U.S.C. § 552(a)(6)(B)(i) allows for an extension of time under "unusual circumstances" that render a request more complex. See § 552(a)(6)(B). BIA-OJS issued no such notice.

Interior's own regulation, 43 C.F.R. § 2.21(b) explains that "[i]f the bureau determines that [a] request will take longer than 10 workdays to process, the bureau immediately will send [the requestor] a written acknowledgement that includes the request's individualized tracking number and processing track." A processing track distinguishes "simple requests from more complex ones on the basis of the estimated number of workdays needed to process the request." 43 C.F.R. § 2.15(a). According to Mistie Little Wind's declaration, the Tribe's request took over twenty-one workdays but fewer than sixty workdays to process, which would place the request in the "Complex" track. § 2.15(c)(3). Yet the Tribe never received notice indicating the request would take longer than ten days. That mandatory notice would have allowed the Tribe "an opportunity to narrow [its] request so that it [could] be placed in a different processing track." § 2.15(e). The Tribe only received an email from Interior indicating the request was "Received," an email from Interior indicating the request was "Assigned for Processing," and an email from SAC Burge indicating "[t]hese FOIA requests were received and are being processed as per regulations." Doc. 15 at 4–5; Doc. 17 at 10.

The cases BIA-OJS cites in opposition do not persuade the Court. In <u>Mobley v. Department of Homeland Security</u>, the court disagreed that the plaintiff "substantially prevailed" because no documents were produced as a result of processing the request. 908 F. Supp. 2d 42, 48 (D.D.C. 2012). The court also held that because the request was processed "only three weeks after the complaint was filed, and the government did not . . . oppose the plaintiff's first motion

5

for preliminary injunction," there was no evidence the government was "engag[ing] in the sort of dilatory litigation tactics that [the FOIA attorney's fee] provision was aimed to prevent." Id. Here, rather than no documents being responsive, BIA-OJS produced "25 documents totaling 1,263 pages," Doc. 15 at 6, and its response arrived three months (rather than three weeks) after the complaint was filed— just days before the status hearing this Court scheduled on the matter. Doc. 6; Doc. 26 ¶ 10.

In Valencia v. United States Citizenship & Immigration Services, the court found attorney's fees inappropriate because rather than exhibiting a "voluntary or unilateral change in position," the agency merely "followed its own normal procedures in producing the documents." No. 1:12CV102 DAK, 2012 WL 3834938, at *2 (D. Utah Sept. 4, 2012). But as explained above, if BIA-OJS followed its own normal procedures, it would have communicated a delay to the Tribe before the production date of August 15, 2024. It did not.

Finally, Beltranena v. United States Department of State is distinguishable, because there, the agency declared that a search for responsive documents was ongoing, so two documents produced after the complaint was filed reflected to the court "good faith on the part of the agency that it continue[d] to search for responsive documents." 821 F. Supp. 2d 167, 180 (D.D.C. 2011) (quoting Landmark Legal Found. v. EPA, 272 F. Supp. 2d 59, 63 (D.D.C. 2003)). Here, it is undisputed that the search for documents did not begin until after the complaint was filed. Compare Doc. 1 with Doc. 26 ¶ 9.

Because BIA-OJS communicated no delay in processing time, and because the Tribe received no response within the statutorily mandated twenty-workday window, see 5 U.S.C. § 552(a)(6)(A)(i), the Court holds that "prosecution of the action could reasonably be regarded as necessary to obtain the information [sought]." Miller, 779 F.2d at 1389. Because a search for

responsive documents did not begin until two months after the Complaint was filed, the response was not completed until three months after the complaint was filed, and because BIA-OJS failed to indicate due diligence by invoking or following any statutory or regulatory mechanism for extending the time to respond, the Court finds it was "the existence of the lawsuit [that] had a causative effect on the release of the information." Id.  The Tribe is eligible for an award of attorney's fees.  Id.

### 2. Entitlement to an Award of Attorney's Fees

To determine whether a complainant is entitled to an award of attorney's fees, courts in the Eighth Circuit should consider factors such as "(1) the benefit to the public to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records which [it] seeks; and (4) whether the government's withholding of the records had a reasonable basis in law," with benefit to the public being "[p]robably the most important consideration."  Id. (citation omitted).

BIA-OJS argues that the Tribe "is not eligible for attorney fees and *not entitled* to the same."  Doc. 24 at 2 (emphasis added).  But BIA-OJS makes no separate argument against entitlement.  See generally id.  The Court, however, "is required to determine . . . entitlement by considering all relevant factors."  Miller, 779 F.2d at 1389.

The Tribe alleges it filed its FOIA request to address a "public safety crisis" on its Reservation, namely, to explore the possibility of entering a self-determination contract for law enforcement services on the Reservation to better protect its members.  Doc. 1 ¶¶ 11–21; Doc. 14 at 1–2.  The Court cannot imagine a benefit to the public greater than its safety.  The request was not intended to produce a commercial benefit to the Tribe.  Nor does BIA-OJS allege a

7

reasonable basis in law for withholding responsive materials. The Tribe is entitled to an award of attorney's fees.

### B. Reasonability of the Tribe's Requested Award

FOIA requires any award of attorney fees to be reasonable. 5 U.S.C. § 552(a)(4)(E)(i). "The starting point in determining reasonable attorney fees is the lodestar calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Black Hills Clean Water All. v. U.S. Forest Serv., 733 F. Supp. 3d 801, 804–05 (D.S.D. 2024) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005)). There is a strong presumption that the lodestar figure is reasonable. Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986). Because it is the burden of the party seeking attorney's fees to prove its request is reasonable, it "must 'submit evidence supporting the hours worked and rates claimed.'" Black Hills Clean Water All., 733 F. Supp. 3d at 805 (citing Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 246 (8th Cir. 1996) and quoting Hensley, 461 U.S. at 433).

"The Court has 'broad discretion' in considering the amount of fees." Id. (quoting Wescott Agri-Prods, Inc. v. Sterling State Bank, Inc., 682 F.3d 1091, 1095 (8th Cir. 2012)). When considering either hourly rates or hours spent, "courts may draw on their own experience[,] knowledge of prevailing market rates," and "expertise of the time required to complete similar activities." Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005); Paris Sch. Dist. v. Harter, 894 F.3d 885, 889 (8th Cir. 2018) (citation omitted). A universe of factors can inform the court's decision whether to refine the lodestar figure, such as "the preclusion of employment by the attorney due to acceptance of the case," or "the skill requisite to perform the

legal service properly." Black Hills Clean Water All., 733 F. Supp. 3d at 805 n.2 (listing the Johnson[1] factors).

The Tribe requests $31,939.00, which represents 108.4 hours spent on this litigation, as well as its $405.00 filing fee. Doc. 28 at 1; see also Doc. 15 at 8–9; Doc. 16 at 4–5; Doc. 17 at 13; Doc. 29 at 3–5; Doc. 30 at 3–4. BIA-OJS objects and asks the Court to reduce the fees attributed to: (1) a motion for summary judgment that the Tribe's counsel began early in the litigation and never filed; (2) "duplicative status fees"; and (3) time "spent reviewing the records disclosed." Doc. 24 at 7–10. BIA-OJS further considers "exorbitant" the ratio of the Tribe's request for fees related to bringing this motion ("fees-on-fees") compared to the total requested. Id. at 12–13. Finally, BIA-OJS considers "the issues presented by the underlying litigation . . . neither novel nor difficult," and not requiring "specialized or unique" skills, thus warranting a reduction in fees. Id. at 11.

### 1.      Fees Attributed to an Unfiled Motion for Summary Judgment

BIA-OJS argues that fees assessed for drafting a motion for summary judgment are inappropriate, because the motion was unnecessary to resolve the dispute. Id. at 7–8. It argues that counsel began working on the motion before this Court even set scheduling deadlines—the inference being that at a time when its necessity reasonably remained uncertain, the Tribe began drafting an ultimately useless dispositive motion. Cf. id. at 8. BIA-OJS compares the situation to those where courts found that a plaintiff "failed to prevail on a [distinct] claim," had "limited success," or requested fees for "nonproductive activities." Id. at 8–9 (quoting Hensley, 461 U.S.

---

[1] Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

at 440; Yonemoto v. VA, 549 F. App'x 627, 630 (9th Cir. 2013); Jud. Watch, Inc. v. DOJ, 878 F. Supp. 2d 225, 239–40 (D.D.C. 2012)).

The Tribe counters that it "would not have expended time drafting its Motion for Summary Judgment" if BIA-OJS had communicated an expected date of response. Doc. 28 at 4. It claims it drafted the document with an intent to "expedite the litigation as much as possible." Id.

The points of both parties are well-taken.

It is true that a Court should reduce fees for matters unnecessary to the litigation. Hensley, 461 U.S. at 434. In retrospect, the Tribe's motion for summary judgment, and the hours spent drafting it, were unnecessary to obtain BIA-OJS's response. But only prognostication could have alerted the Tribe to that outcome at an earlier time. "Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." Dep't of Just., Guide to the Freedom of Information Act, Litigation Considerations Part 2 at 1 (2024). Given the lack of communication by BIA-OJS, it was reasonable for the Tribe to assume such a motion would be useful.

But the Court also appreciates the argument that the Tribe began unnecessary work that would have been avoided if the Tribe waited until the scheduling order was issued. Motions were not due until March 2025. Doc. 7. The Court held its first status conference on August 19, 2024. Doc. 6. By that time, the Tribe had received a response from BIA-OJS deemed sufficient to cease litigation. Doc. 8. Regardless, given the important subject matter addressed in this case, public safety at a "crisis" level, the Court understands why early briefing was necessary.

The Court believes the proper result is halving the fees attributable to the motion for summary judgment. Based on a review of the invoice submitted, the amount of time expended on drafting the motion for summary judgment and supporting materials was not excessive. But, the amount of time was not entirely necessary given the early stage of the litigation. The Court calculates the total billed amount attributable, at least in part, to the motion for summary judgment as $10,530—$9,960 as to Olivia Lehman and $570 as to Jennifer Bear Eagle. See Doc. 15 at 8–9; Doc. 17 at 13. The Court therefore reduces the amount of attorney's fees sought by $5,265.

### 2.     "Duplicative Status Fees" / Time Spent Reviewing Documents

BIA-OJS challenges hours billed for the review of project status "after the BIA-OJS made its disclosure of August 15, 2024, and prior to Plaintiff filing its motion for attorney fees . . . when no change in project status [was] occurring." Doc. 24 at 9. The Court finds these charges reasonable. After August 15, 2024, when BIA-OJS made its disclosure, the Tribe was ordered to determine whether the response made by BIA-OJS was deemed by the Tribe sufficient to cease litigation. Cf. Doc. 7. Counsel for the Tribe had to coordinate with the Tribe to make that determination—with the corresponding status report filed on November 18, 2024, around the time an uptick on these project status reviews appears on Jennifer Big Eagle's billing statement. See Doc. 8; Doc. 17 at 13. That Ms. Big Eagle spent another eighteen minutes reviewing the status of the project between the date of filing that status report and the date of the Tribe's filing of its motion for attorney's fees is unalarming. Doc. 17 at 13; Doc. 13.

The Court further disagrees with Defendant's argument that any time the Tribe spent reviewing the FOIA response is not compensable. This Court ordered the review of those records as part of this litigation. Doc. 7 at 1. The time spent following the Court's order is

compensable. Accord Elec. Priv. Info. Ctr. v. FBI, 80 F. Supp. 3d 149, 159 (D.D.C. 2015) ("[T]o the extent that the released documents are being reviewed to evaluate the sufficiency of the release . . . such document review time is properly included in a FOIA attorney's fees award.") (also collecting cases which held similarly).

### 3. Fees-on-Fees and Other Concerns

BIA-OJS asks the Court to reduce attorney's fees related to bringing this motion because it considers high the ratio of such "fees-on-fees" to the total. Doc. 24 at 12–13. The Tribe does not consider the time spent on this motion as excessive. Doc. 28 at 4–5. In light of the Court's experience, it agrees with the Tribe.

None of the cases BIA-OJS cites in support persuades the Court otherwise. For example, in Virginia-Pilot Media Companies, LLC v. DOJ, the court found a reduction appropriate "where there is no dispute as to the attorney's entitlement to fees." No. 2:14cv577, 2016 WL 4265742, at *6 (E.D. Va. Aug. 10, 2016) (citation modified). But here, BIA-OJS did dispute the Tribe's entitlement to fees. Doc. 24. In Oregon Natural Desert Association v. Gutierrez, the court reduced fees because of plaintiff's "partial success." 442 F. Supp. 2d 1096, 1100 (D. Or. 2006), aff'd in part, rev'd in part on other grounds sub nom., Or. Nat. Desert Ass'n v. Locke, 572 F.3d 610 (9th Cir. 2009). But in that case, the plaintiff failed on one of its substantive claims. Id. There is no analog here.

As to the ratio of hours spent litigating this motion compared to the entire case, the Court finds that fact unremarkable. Where, as here, protracted litigation was unnecessary to achieve the Tribe's goal, a high fees-on-fees ratio would be expected.

Finally, to the extent BIA-OJS considers the instant motion so mundane as to require a reduction in the lodestar, Doc. 24 at 11, it fails to argue what amount it would consider sufficient. BIA-OJS merely argues for "less." But in the Court's experience, the rates charged, and hours spent litigating the matter, with one exception already deducted, are reasonable.

**III.    Order**

For the above reasons, and the record as it now exists before this Court, it is hereby:

ORDERED that Plaintiff's Motion for Attorneys' Fees (Doc. 13) is granted in part and denied in part. The Crow Creek Sioux Tribe is awarded $26,674.00 in attorney's fees.

If there is nothing further for the parties to litigate, see Doc. 8 at 1, the parties should so inform the Court and file a joint motion to dismiss within 30 days of this order.

DATED this 18th day of September, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE